UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JARED JOSEPH KESSEN,

Plaintiff,

v. Case No. 24-cv-0708-bhl

DR. IRIS TORRES et al.,

Defendants.

## DECISION AND ORDER

Plaintiff Jared Kessen, who is currently incarcerated and represented by counsel, is proceeding on an Eighth Amendment claim based on allegations that Defendants delayed his treatment for a fractured finger, leading to permanent damage. This matter comes before the Court on Defendants Britteny Brousseau, Jean Doty, Nicole Hunter, Dawn Kemper, Lori Miller, Jenny Overman, Ann Smith, and Lynn Tasche (the Defendant Nurses) motion to dismiss for failure to state a claim. Dkt. No. 72. For the reasons explained below, the Court will grant the motion.

### PROCEDURAL BACKGROUND

On June 6, 2024, Kessen, who was at that time incarcerated at the Sheboygan County Detention Center, filed a *pro se* complaint alleging that his rights had been violated under 42 U.S.C. §1983. On August 16, 2024, he filed an amended complaint, which Magistrate Judge William E. Duffin screened in a Report and Recommendation. On December 11, 2024, the Court overruled Kessen's objections and adopted Judge Duffin's Report and Recommendation, allowed Kessen to proceed on medical care claims against John and Jane Doe nurses, and returned the case to Judge Duffin for further proceedings.

A couple of months later, on February 6, 2025, Kessen notified the Court that he had retained an attorney, and on April 2, 2025, Julius Andriusis filed a notice of appearance. On October 10, 2025, Kessen filed a motion for leave to file a second amended complaint, which was granted on November 17, 2025. Judge Duffin screened the second amended complaint and allowed Kessen to proceed on medical care claims against nine named nurses. On March 27, 2026, the case was reassigned from the magistrate judge. About a month later, on April 20, 2026, Kessen's counsel acknowledged that Nurse Joni Boriskey had not been timely served with the

second amended complaint and stated that Kessen had no objection to dismissing his claim against her. The Court dismissed Kessen's claim against Boriskey the following day, and she was terminated from this action.

On May 11, 2026, the Court held a scheduling conference, at which counsel for the Defendant Nurses, without objection from Kessen's counsel, clarified that further amendment to the complaint would be needed to eliminate unnecessary Defendants. The Court set a deadline of August 10, 2026, for Kessen to file a third amended complaint.

On the deadline, Kessen filed a third amended complaint. Rather than eliminating Defendants, Kessen added seven new Defendants. Specifically, in addition to bringing claims against the Defendant Nurses, he sought to bring new claims against Dr. Iris Torres, Shawn Murphy, P.A, Advanced Correctional Care, Inc., Aurora Health Care, Inc., ABC Insurance, Ironshore Specialty Insurance Company, and Joni Boriskey. On August 24, 2026, the Defendant Nurses filed a motion to dismiss. On Septembter 18, 2026, Ironshore Specialty Insurance Company filed a motion to dismiss, and on October 2, 2026, Aurora Health Care Inc. and Shawn Murphy filed a motion to dismiss. Not long after, Kessen agreed to dismiss his claims against Ironshore Specialty Insurance Company, Aurora Health Care Inc., and Shawn Murphy. Dkt. Nos. 92, 93. The Court will therefore deny those Defendants' motions to dismiss as moot. The Defendant Nurses' motion to dismiss is fully briefed and ready for the Court's decision.

## ALLEGATIONS OF THE THIRD AMENDED COMPLAINT (Dkt. No. 68)

According to Kessen, on January 14, 2024, he injured his hand. The following day, he received an x-ray with "inconclusive" results. It was recommended that he receive a "Multiview study in one week or sooner if symptoms persist." Kessen asserts that he was in severe pain and made "several requests for service" that went unanswered. On January 22, 2024, he asked to be seen. Two days later, a "staff member" advised Kessen's provider, Dr. Torres, to schedule Kessen with a hand specialist for evaluation. About a week later, Kessen complained about his hand hurting, to which "someone in the Medical Department" responded that he had an appointment scheduled. Kessen also requested pain medication, but his request "was denied by someone in the medical department."

Less than a week later, on February 6, 2024, Kessen was seen offsite by a hand specialist who recommended an MRI to better assess the injury. A week later, on February 12, 2024, Kessen received the MRI. Kessen's provider was advised that she would be updated with the results as they became available. On February 19, 2026, Kessen noted his hand was still bothering him and

asked about treatment. He was informed that the medical department was still waiting for the MRI results. The next day, Kessen submitted two requests asking to be seen by a hand surgeon. He received a response that stated "Completed."

About a week later, Kessen asked to see the MRI results. An unidentified person told him that the report had not yet been sent. Kessen complained the next day, on February 27, 2024, about the lack of treatment, and "the Medical Department" responded that he was scheduled. Kessen continued to ask about the MRI results, and staff continued to inform him that no report had been sent. On March 7, 2024, Kessen had another appointment with the offsite hand specialist, who informed Kessen his finger was broken and placed him in a fiberglass cast. Kessen asserts that he complained the cast was cutting into his wrist and asked for medical tape, but he did not receive a response. Kessen again asked for medical tape a few days later, on March 12, 2026, but "the Medical Department" denied the request. An officer allowed Kessen to replace the tape two days later.

On March 14, 2024, Kessen complained about the cast cutting into his arm. "The Medical Department" notified him that he could put gauze between the cast and his arm. Kessen complained that the gauze would not stay in place. Kessen was then advised by "the Medical Department" to use a sock to protect his skin. Kessen was provided with gauze on March 21, 2024.

On March 25, 2024, Kessen was again evaluated by the offsite specialist who removed the cast, diagnosed Kessen with a fracture, and referred him for a follow-up appointment with a hand surgeon. Less than a week later, Kessen was advised that his provider was reviewing the referral recommendation. On April 10, 2024, Kessen was advised that his provider had denied the recommended referral to a hand surgeon. Instead, Dr. Torres ordered a new x-ray, which Kessen refused because he believed it was unnecessary given that he had already received an MRI. On April 11, 2024, Dr. Torres characterized Kessen's injury as resolved. Medical staff then followed up on a prior request for the specialist's records, which apparently led to Dr. Torres changing her mind because, on April 25, 2024, Nurse Doty, under the orders of Dr. Torres, requested an appointment for Kessen with the hand surgeon.

On May 13, 2024, Kessen was evaluated offsite by the hand surgeon. According to Kessen, he was informed that his hand was permanently damaged and that treatment would only decrease the pain. The hand surgeon allegedly informed Kessen that his injury could be addressed only through fusion after hand therapy.

## LEGAL STANDARD

A motion to dismiss is governed by Federal Rule of Civil Procedure 12(b)(6), which allows a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## THE COURT'S ANALYSIS

Kessen asserts that the "collaborative inaction and deliberate indifference" of the Defendant Nurses delayed treatment for his hand injury. To state a claim under the Eighth Amendment, a plaintiff must allege that prison officials intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). "A delay in treatment may show deliberate indifference if it exacerbated [the plaintiff's] injury or unnecessarily prolonged his pain." *Id*. at 777-78. Moreover, §1983 requires that an individual be personally involved in the alleged constitutional violation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Accordingly, because there is no vicarious liability under §1983, a plaintiff must allege a causal connection between the sued official and the alleged misconduct. *Id.*

The Defendant Nurses are correct that Kessen fails to state a claim against them because the third amended complaint does not include allegations from which the Court can reasonably

infer that any of them was personally responsible for the alleged violations. Whether a defendant was personally involved is not "a technicality" as Kessen suggests, *see* Dkt. No. 75 at 1; it is a requirement for liability under §1983. Kessen concedes that "not all nurses named in the Third [Amended] Complaint may be directly involved," but insists that he may proceed with his claims against them because they have not made "a good-faith effort . . . to clear their own name." But the Defendant Nurses do not bear a burden at the pleading stage to "clear their own name." Rather, under Fed. R. Civ. P. 8, Kessen bears the burden of providing notice to *each* defendant of what he or she allegedly did or did not do to violate his rights. At most, Kessen alleges that the Defendant Nurses worked at the Detention Center at the relevant time, but this is an insufficient basis for any of them to be held personally liable. Rule 8 requires Kessen to plead sufficient factual content from which the Court can reasonably infer (rather than speculate) that each nurse was involved. Kessen has failed to do this.

Moreover, even if Kessen had sufficiently alleged the personal involvement of each of the Defendant Nurses, he fails to state a claim on which relief can be granted. According to the third amended complaint, "[Dr.] Torres had full authority and control over decisions involving inmate medical care, as that of Kessen, including approval for outside visits with specialists . . . ." Dkt. No. 68 at ¶66. Kessen further alleges that "the only person authorized to take any decisions on Kessen's treatment while he was at the [Detention Center] was [Dr.] Torres . . . ." *Id.* With regard to the Defendant Nurses, Kessen alleges only that someone in the medical department responded to his numerous complaints by confirming he had appointments and updating him on the status of test results. Thus, even if Kessen had identified the particular staff member who responded to his health services requests, he would have failed to state a claim because, according to Kessen's own allegations, *only* Dr. Torres had the authority to order treatment in response to Kessen's complaints. The mere fact that nurses may have passed information to and from Dr. Torres does not reasonably suggest that they were involved in Kessen's care. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Public officials do not have a free-floating obligation to put things to rights, disregarding rules … along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen.").

Nor does Kessen state a claim based on allegations that he had to wait a week before receiving medical tape and/or gauze in response to his complaints that the fiberglass cast was "cutting into" his arm. The Seventh Circuit has "found the following circumstances to be indications that a prisoner has a serious medical need: The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (citations and internal question marks omitted). The Court cannot reasonably infer that the temporary discomfort caused by a fiberglass cast was a serious medical need. *See Pinkston v. Madry*, 440 F.3d 897, 891 (7th Cir. 2006) (holding that injuries such as a split lip, swollen cheek, small lacerations, or scraped elbows do not rise to the level of an objectively serious medical need). Put plainly, the discomfort about which Kessen complained does not qualify as an injury that is "so serious that even a lay person would easily recognize the necessity of a doctor's attention." *Id.* (citations omitted).

For these reasons, Kessen fails to state a claim against the Defendant Nurses. The Court will therefore grant their motion to dismiss.

## REMAINING MOTIONS AND ISSUES

First, on September 15, 2026, Kessen filed a motion to seal documents containing personal healthcare information. According to Kessen, "[p]ublic access to the materials . . . would violate the Plaintiff's HIPPA rights." Dkt. No. 76. "Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality." *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *see Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) ("It is beyond dispute that most documents filed in court are presumptively open to the public."). A party may therefore only file a document under seal if it has shown "good cause" to do so. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). Merely asserting that disclosure would be harmful is insufficient without an explanation of how a disclosure would cause harm. *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002).

Kessen chose to place his medical condition and treatment at issue. The medical records and information that he seeks to seal are relevant to his claims and therefore are presumptively open to public view so that the public may understand the basis for the Court's decisions. Kessen does not explain how the disclosure of these documents, which would benefit the public's

understanding of his claims, would harm him. He accordingly has not shown good cause to deprive the public of access to these documents. The Court will therefore deny the motion to seal.

Next, on November 5, 2026, Kessen filed an expedited motion for an extension of time for expert discovery. Because the Defendant Nurses' motion to dismiss has been granted, the Court will deny the motion as moot and will vacate the scheduling order entered on May 12, 2026.

Finally, according to the docket, the only remaining Defendants—Dr. Torres, Boriskey, and Advanced Correctional Care Inc.—have not yet been served with the third amended complaint. Given that under Rule 4(m), the time to serve Dr. Torres, Boriskey, and Advanced Correctional Care Inc. expired on November 8, 2026, Kessen is on notice that this action will be dismissed in twenty-one days if he does not file proof of service or move for an extension of time to serve them.

**IT IS THEREFORE ORDERED** that Britteny Brousseau, Jean Doty, Nicole Hunter, Dawn Kemper, Lori Miller, Jenny Overman, Ann Smith, and Lynn Tasche's motion to dismiss (Dkt. No. 72) is **GRANTED**. The clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that Ironshore Specialty Insurance Company's motion to dismiss (Dkt. No. 80) and Aurora Health Care Inc. and Shaw Murphy's motion to dismiss (Dkt. No. 87) are **DENIED** as moot.

**IT IS FURTHER ORDERE**D that Kessen's motion to seal (Dkt. No. 76) is **DENIED**.

**IT IS FURTHER ORDERED** that the scheduling order (Dkt. No. 65) is **VACATED**. The clerk's office is directed to remove all dates, including the March 11, 2027 final pretrial conference and the March 22, 2027 trial, from the Court's calendar.

**IT IS FURTHER ORDERED** that if Kessen fails to file proof of service or move for an extension of time to serve Dr. Torres, Boriskey, and Advanced Correctional Care Inc., his claims against them (and this action) will be dismissed.

Dated at Milwaukee, Wisconsin this 10th day of November, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
Chief United States District Judge